We move to the fourth case this morning, Davis v. City of Chicago. Mr. Needham Good morning, may it please this honorable court and counsel. I'm joined by my colleague Kevin Turkin today. We represent Lorenzo Davis, the plaintiff and the appellant. After a career with the Chicago Police Department, which included being promoted to the rank of commander, Davis retired and then went to work shortly thereafter for the city agency that investigates cases of alleged police misconduct and all officer involved shootings. He was good at his job, getting an excellent rating from the defendant, Ando, in 2013. But in 2014 and 2015, Ando and another defendant, Mitchell, began telling Davis that he should take the cases where his investigations had found police misconduct and change his findings, cases of police misconduct, including excessive force and unjustified shootings, and change his findings to appear as though he had found the exact opposite. They also ordered Davis to make changes to the contents of the reports he wrote, even though they had never never done any investigation or interview any of the witnesses themselves. Now, Davis's job was to investigate charges of misconduct and write accurate reports and recommendations based on his investigations. So why was it not part of his job to refuse to falsify those reports? Refusing to falsify seems to be the same as a duty to write accurate reports in the first place. You know, Garcetti sometimes leads to harsh writing correct and accurate reports, which Davis was doing. And writing false reports or falsely changing the contents of your reports because you're ordered to do so are not the same. They're in fact, they are exactly the opposite. One is an act of professionalism and integrity, and the other is an act of misconduct. And I actually don't agree. What I'm saying is it was not part of his job to refuse to falsify those reports. Well, it actually was part of his job. We expect that there's an analogy that we make to citizens. A citizen would never be expected to submit a false affidavit or to make a false statement on a police report. I don't think you understand my question, I fear. All right. Or perhaps I'm just not doing it properly. In other words, refusing to falsify is part of his job. I would say I disagree, Judge. I think it's the exact opposite of his job. And if you let me just talk about Garcetti for a little bit, because it's obviously an important case that this court has to consider. In Garcetti, the district attorney who wrote the disposition memo in that case concluded that a certain prosecution should not go forward because of some misconduct he found. The memo went up to his chain of command. At that time, there was a meeting that was held and the district attorney there, Mr. Garcetti, decided to reassign the prosecutor who wrote that memo. However, there was never a order or an instruction that he change his memo. In fact, the exact opposite happened. If you read the facts of Garcetti v. Sabalos, the memo was actually disclosed to the defendant in the underlying case, presumably under Brady v. Maryland, and the prosecutor who wrote the memo testified for the defendant in that case. So what we have here in this case that the court has is something that the Supreme Court in 2006 never had. If Andel and Mitchell had behaved like Mr. Garcetti in that case, we would not be here today. Well, it seems to me that it would be fair to say that it was part of his job to refuse to falsify those reports or engage in a cover-up. Well, I respectfully disagree, Judge Ravner, and I would say that while management has certainly been given discretion by the Supreme Court and a certain amount of deference, a great amount of deference to manage the workplace, that deference does not include the right to order an employee to write a false report. False factually or in terms of just the overall evaluation? Well, in this case, what we've pled, Davis would do the investigations, including reviewing all the evidence, interviewing the witnesses, the videos, and so forth. He would then make findings of, in this case we've alleged, an assessment of the overall evidence. Right. He'd make findings. So let me ask, this may sound a little far-fetched, but you can tell me why your theory doesn't reach this far. Let's say I, after an oral argument in conference of the judges, order one of my law and the law clerk refuses, saying that's wrong, the court ought to reverse. And my job as a law clerk is to serve the law and give you my best opinion, and my best opinion is you should reverse, and I'm not going to do it. If I fire that law clerk, does he have a First Amendment claim against me? No. I mean, what's the difference? Well, obviously, there'd be immunity issues, but... Forget the immunity. Okay. But, Judge, you'd have a completely different dynamic in a case like this where a record comes up and a seasoned judge or an Article III judge makes a certain decision and then tells someone who's... Maybe it's a career law clerk who has more experience than I do as a judge. Right. I think it's different. There's something fundamentally different about reviewing a record on appeal and coming to a conclusion about applying the same problem? No. I think in this case, what Lorenzo Davis was doing was interviewing witnesses, making factual findings, and then concluding that the police had engaged in excessive force or unjustified shooting. And then, in addition, the complaint led us here, Judge. It wasn't just change your findings, but the allegation in one paragraph of our complaint is that Ando and Mitchell were telling him, change the actual content of that report. And here's what's critical. When Davis would refuse to do this, at one point, Ando and Mitchell told him, well, then just send us the Microsoft Word versions of your work so that we can make the changes. And the intent when they did this was to make it look as though Davis had concluded that there was no police misconduct when, in fact, he concluded the opposite. So is it your theory that every employee of the IPRA had a First Amendment right, in essence, to issue dissenting opinions? Well, they're not really dissenting opinions. Well, would they? Well, I want to say, when we filed our complaint and the way we litigated this case in the lower court before Judge Cookhorst, we did make the argument that the actual submission of the reports was First Amendment protected activity. In our briefs, you can see our argument is honed and it's more narrow, and we're saying it's the, when Davis said no to Ando and Mitchell's instructions that he falsify his reports, his statement, no, his refusal was protected. That's the protected speech? Yes. So the refusal to comply with an order from management is protected speech? Right. Not just a refusal to comply with an order from management, but a refusal to comply with an order from management. And do it in such a way that when your work is reviewed down the stream, because these reports go places for the superintendent of police and civil litigants and criminal litigants and attorneys and judges, someone's going to read this, and it's going to look like Lorenzo Davis found that there was no police misconduct when, in fact, the exact opposite was true. Yes, Davis can see that the reports themselves are not protected speech, that those were created in his capacity as a public employee. Yes, Judge, we are in this court, and we've made that clear. If so, why would the content of the reports or their accuracy matter to the analysis of whether speech is protected? Because the refusal to do something when you're ordered to do it that's improper and arguably illegal is a different form of speech. His no is his form of speech. I mean, and I understand there's a wealth of precedent out there. By my count, there's 15 or 16 decisions that this court has reviewed since Garcetti where you're dealing with government employee retaliation claims. None of them have presented this fact pattern. It's very rare. Well, the only problem is, as you know, I mean, we're talking around it, it depends how we write an opinion. If we bought your position, you're never going to end up with a decision that doesn't get appealed. I mean, if the subordinate doesn't agree with what his boss says the thing should look like, even though the boss may be responsible for it, you bring it to court. Well, actually, it's exceedingly rare. The cases where this court has decided, you know, Vose, Kubiak, Rourke, all the fairly recent cases involve affirmative statements like actions where people are writing reports and then getting disciplined for those reports and then claiming that's a First Amendment violation. Here we have the analogy to this case or the case that's virtually identical to our case is the one decided by your colleagues in the Second Circuit in 2011, this Jackler decision, where they do explain, and I urge the court to pay close attention to that because that really is the closest factual situation we have here. That's why I was asking you, Mr. Needham, earlier about the difference between, or let me be more explicit about whether there is a difference between facts and analysis of facts. Right. Because, for example, we've got, I'm just trying to remember the Supreme Court's case on testimony, Lane against Franks, where the court says, if I may paraphrase, but in essence testifying as a witness under subpoena is speech as a citizen, not as a public employee, at least under those circumstances. But what we have here is somebody who's writing evaluations or analyses where there's room for judgment. It's not the kind of thing that you would testify about. Although he might, it's fairly common for these investigators to be deposed in civil cases or to testify in criminal cases. But I understand what you're saying, Judge, but the point is in the complaint that we're dealing here with a case that was dismissed under 12B6, we're accepting the facts that we've pled and they're well pled. And in this case, we're alleging that he was told to change his findings, although the people telling him to do that had never done any investigation. All of the times he was told, according to our complaint, to change the finding, it was always in a manner that benefited the officer accused of misconduct. And he's being told to change the substance of his reports, if it's true. Now, he contends that if he doesn't have a remedy under the First Amendment, then government employees who refuse to participate in cover-ups have no remedy when they're subsequently fired. How are his state court claims proceedings? Why aren't those adequate to protect his rights? Well, we did have a state court claim, two state court claims in our complaint. Judge Koukouras didn't reach the merits of those, but it is true that there's an Illinois whistleblower act that also fits this. But I insist that his refusal to change his reports, as he was being ordered to do, was speech under the First Amendment. And he wants his First Amendment federal claim heard in this building before federal judges. But if I could just get back, Judge Hamilton, to what you just alluded to. If it's true, if Ando and Mitchell's defense is that, well, these were just opinions and I had the right to change your opinions. And you exercise poor judgment and they could have told him. That would be a defense to the case. It's not an attack on the pleading. We're pleading that he was told to change his reports in a way so that they read falsely. Maybe a judge at summary judgment or a jury down the road will conclude that Ando's right. Davis doesn't know what he's doing and he has the authority to change his opinion. So given Garcetti's reluctance to have federal courts intervene in public employee, the management of public employees, the rule you're advocating, a First Amendment right to say no to an order, seems to be an invitation to have us intervene in an awful lot of issues. Well, if that had been the warning, obviously, in Garcetti about not treating every workplace dispute as a constitutional matter. But the fact is, since Garcetti was decided, this court has not had this factual situation once. Well, one way to interpret that is because everybody else thinks Garcetti applies to this case. Right. And if we agree with you, I would expect we'd see a lot more of these cases. Well, maybe I could tell you that the Second Circuit in Jackler dealt with this exact same situation. It's not exactly the same. Jackler is a lot closer to the lien against Frank's context with a legal duty to provide a factually accurate account, right? Right. And not analysis. Well, right. But I mean, when you say analysis, Davis is interviewing witnesses and then writing down or recording what the witnesses say. So if he's being told then to change the contents of his reports, then that's no different. Is it your contention he was being told to change his account of what witnesses told him? Well, the complaint did not go into that much detail. But the complaint does say that on the six cases that we refer to every single time Ando and Mitchell were telling Davis, change your findings from sustained to not sustained. That's a conclusion. Right. Okay. And also that he was just being ordered to change the contents of his report. Well, the more and more involvement, the pressure in this locality is to get us involved in running the Chicago Police Department. Well, and if I could just briefly because I think I'm... Well, we're giving you plenty of time. I appreciate that. So there's a... I'm not sure you appreciate it, but... No, I'm fine. One of the issues is this question of whether or not he was speaking on a matter of public concern and Judge Koukouras ruled that he was not, but I respectfully suggest really even in the city of Chicago where this... Davis was fired in 2015. And in 2016, the United States Department of Justice was here looking at this exact same problem, the problem of police accountability. Different Department of Justice now, right? Pardon me? A different Department of Justice now. I know, but the same... The leadership is different, but the career people I think are the same. But I guess the point is that this independent police review authority, it is a matter of public knowledge now. It doesn't even exist anymore because some of the things that Lorenzo Davis was saying was a problem there turned out to be right. The agency was actually abolished because of the recommendation that was made by the Department of Justice. We're asking the court to take a close look at Jackler, and Jackler should be the law here. We'll be creating just a narrow class of cases, which we haven't even seen here, for people like Davis who have the integrity to stand up to their bosses and say, no, I'm not going to falsify a report. That's the First Amendment activity that should be protected in this circuit. Thank you. Thank you. Mr. Layden. May it please the court. Your Honor, Mr. Davis cannot state a First Amendment retaliation claim because the speech he alleges as the basis for his claim was not constitutionally protected. This morning, I intend to focus my remarks on two reasons the speech was not constitutionally protected. First, Mr. Davis's responses given to supervisors directions about the performance of his work-related tasks was pursuant to his job duties. And second, those responses were not of context and form. Did the city argue below that Davis's speech did not address a matter of public concern, or was this? Can you hear me, Your Honor? Yeah. No, the city did not argue this below. The district court ruled on that ground, however, and Mr. Davis challenged the district court's judgment on both grounds, the public concern and the job duties. So in response to Mr. Davis's arguments in his opening brief, the city has briefed that issue. It is a legal issue, and the court can decide on that basis. Turning first to whether the speech was pursuant to Mr. Davis's job duties, the focus on this prong is on the speech, not on what the orders were that the inquiry asks, was the speech pursuant to professional responsibilities? Here, Mr. Davis, his counsel has clarified that the particular speech that he is relying on is when he said to his supervisors he refused to change the content of his work product. That response was given to supervisors directing him in the performance of his work-related tasks, and it is plainly part of one's job duties as a public employee when a supervisor is directing the manner in which you're performing your work-related tasks to give a response, regardless what the content was, regardless what he believed to be the reason for refusing. That is not what the First Amendment claim is about. It simply was the speech made pursuant to one's job responsibility, and the First Amendment claim is not going to decide, was Mr. Davis right about the underlying work product that he wanted changed and that the supervisor wanted changed and that he did not? It's not going to decide, even if the court were to rule against us, whether Mr. Ando was right asking him to commit misconduct or not. This First Amendment claim is not a federal whistleblower claim. This is simply a question of, did he speak wearing a citizen hat or a public employee hat, and was what he said of public concern? If he spoke as a citizen on public concern, the only thing that follows from that is that the employer cannot punish him for his speech, not that he's right, not that there's misconduct that IPRA failed to uncover, not that Mr. Ando was asking him to do something illegal. All of that is irrelevant to this counsel. What if, let's just suppose we had a more specific allegation about a particular investigation. Davis drafts a report that says witness Jones said he saw the suspect with empty hands at the time of the shooting, and Ando orders Davis to modify that report to the witness Jones said he was pulling a knife. Jones refuses. What are the legal consequences of that kind of an order and a refusal? Well, the legal consequences in terms of, we would argue that the First Amendment analysis comes out the same way. Now, whether there is a legal claim based on, for example, a state whistleblower act, if the employer is asking him to do something illegal, those allegations are in the complaint because there were Illinois Whistleblower Act claims pled in this complaint as well. The district court declined supplemental jurisdiction over those claims. Mr. Davis has since refiled those claims in state court. That lawsuit is currently pending and in discovery. That was my question. So they're still alive, but in state court? Correct, your honor. They are currently in the process of discovery on the state law claim. So it's just, here we're on a federal claim, the First Amendment claim and Garcetti and this court's cases make clear there is not a First Amendment remedy for everything that happens in the workplace. If Mr. Davis, you know, all the facts about whether the orders were legal or illegal may come become relevant in the state law claims. They're not relevant for the sole legal issue here on the First Amendment claim. Whose name is on the, was on the IPRA reports when they were issued? Well, ultimately the municipal code assigns to the chief administrator, Mr. Ando. I don't know exactly, I can't, it's not in the record, like whether a report has of whose name is on the particular report. But the boss's name is on it. The municipal code does indeed assign to the chief to make the recommendation. So when he made, when IPRA, it's probably IPRA, I mean, I don't want to misspeak. I don't have a report in front of me to say, but it's IPRA's report and the chief administrator is the official charged by the municipal code with making IPRA's recommendations to the chief of, to the superintendent of police. So in that context, it's, it's plainly a work related, the response given to a supervisor's order, when it is the supervisor's responsibility under the municipal code to draft a report, to issue his findings to the chief of police, the under, the subordinates work product that forms the basis for the IPRA chief's own finding, you know, recommendations is itself, you know, responding to the supervisor about that is plainly within the context of a work related matter, work related communication. I would just also direct. The city attempts to distinguish Jackler, the second circuit case on the ground, that Jackler was a witness to the events and Davis is not a witness, that rather he is an employee charged with writing report. Is Davis not a witness though, to an attempt to falsify reports and cover up alleged police misconduct? Um, your honor, he, that's certainly he, he believes that there were, he would have been covering up misconduct. No, no, no. What I'm asking you is, isn't he a witness to whatever may be going on here as well? Can't you be an employee and a witness at the same time? Um, your honor, hypothetically, Mr, Mr. Davis could have, if he thought that there was misconduct happening in the workplace by Mr. Ando, as opposed to misconduct in the underlying facts. I think we should distinguish that those two different forms of misconduct, the underlying facts, Mr. Davis was not a witness to. He was investigating the facts and interviewing witnesses who were, um, witnesses to the underlying facts. But if Mr. Davis thought that there had been misconduct in the workplace by Mr. Ando or by Mr. Mitchell, yes, your honor, he would be a witness to those facts, but he is not, that's not the statement that he's making. The first amendment claim focuses on whether the particular statement he made was pursuant to his job duties. And he is not, he does not allege. In fact, this morning, counsel said he's very clear about what the statement is. His statement is, I refuse to change my reports and my work product. His statement was not, Mr. Davis, Mr. Ando is committing misconduct. He, and the reason is because he's an IPRA investigator charged with Jackler he relies on, but the second circuit itself in a subsequent decision in Matthews versus Lynch came out the other way as Jackler. And that makes clear that Jackler is not the broad holding Mr. Davis believes it to be. In, in Matthews, the, the position was an internal affairs position, much like Mr. Davis's position here. And the second circuit agreed with the principle we rely on from Garcetti that speech is pursuant to job duties when it owes its existence to an employee's professional responsibility. And here, Mr. Davis's speech owed its existence to his professional responsibility to respond to his supervisor's directions about the content of work product, which he agrees was part of his job to write. Like the plaintiff in Matthews, he was an investigator tasked with looking into police misconduct. So if the second circuit doesn't think a police officer tasked with investigating misconduct who speaks about misconduct and covering up misconduct is speaking as a citizen, then this court should not hold in this case that Mr. Davis was speaking as a citizen. Moreover, in addition to there being different facts in Jackler, we submit that it simply can't stand for the broad proposition Mr. Davis wants it to in light of Garcetti's direction to examine the particular context of the workplace. It can't stand for a broad proposition that any time a first, and a public employee believes that what the supervisor is asking him to say would be false, he has a right not to say something false because Garcetti requires looking at the particular job. And so that's why we would suggest that this court should interpret Jackler as limited to its specific fact context where the supervisor was asking the employee to change what he said about something he himself had witnessed that wasn't related to his particular job necessarily. It was he witnessed a battery that his supervisor committed against an arrestee. And that's different from the facts we have here. But moreover, accepting that Mr. Davis's interpretation of Jackler would really lead to the focus on the wrong inquiry, which is about whether what was not even said would have been false. So now Mr. Davis's inquiry would have us focus on whether what Mr. Davis wanted him to say that he didn't say would have been true or would have been false. That's not the inquiry on a First Amendment claim. The inquiry in a First Amendment claim is whether what he actually did say was pursuant to his job duties. If it was, then there's no First Amendment claim. If it was not, then the court would look at the particular content, context, and form. The First Amendment claim, again, it's simply not a federal whistleblower claim that gets into who's right and who's wrong or whether illegal conduct is being ordered. On that point, I would just direct the court to the Fairley decision that makes plain that the relevant inquiry is not whether it's a good workplace requirement or a bad workplace requirement. And then Bowie, which is the D.C. Circuit case that criticizes Jackler, that case too is relevant. In that case, the court states that the illegality of the government employer's order, even if it is illegal, does not mean that an employee has a cause of action under the First Amendment when he refuses to go along with what the employer said. The focus simply is on whether the speech was pursuant to the employee's job responsibilities, and we submit in this case when the supervisor is directing the performance of a work-related task, it is. Turning just briefly to whether the speech was of public concern, on this prong, it's not the broader subject matter that's relevant, it's the particular conduct. So therefore, we would again direct the court to the particular allegations in the complaint and counsel's statement this morning that the particular content is, I refuse to change my reports. It's not, I think there's misconduct. It's not, I think you're asking me to do something illegal. It's, I won't change my report. That particular conduct, content, is not of public concern. And moreover, in light of the context and the form, the statement is simply directed to a supervisor in the context of an internal dispute. And for that reason, the speech is not of public concern. Finally on, just briefly on our Monell claim, just wanted to mention that Mr. Davis has conceded in his reply that there is no basis to hold the city liable directly on this First Amendment claim. And based on that concession, this court should, however it rules on the rest, uphold the dismissal of the city because it is not possible to get a judgment against a municipality in a Section 1983 claim unless there's a basis for Monell liability. So with respect to that, the city should be out regardless. Unless there are any further questions, we respectfully ask this court to affirm the district court's judgment. Thank you, counsel. I'll give you a couple more minutes. Two. Thank you. I just need two, I think. One point is the IPRA investigators, as we said in our complaint, they are frequently called to testify as witnesses in civil and criminal proceedings. So therefore, obviously their names are on these reports. Otherwise, no one would know to call them as witnesses. And these investigations, by the way, include interviews with the accused officer. So I think that's important to consider. But are those whistleblower cases? I'm sorry? Whistleblower cases? No, I'm talking about the underlying... Well, I know those instances where they're called. Right. No, they're not whistleblower cases. They are criminal cases. Oftentimes these complaints of misconduct arise during a criminal case or someone's arrested or there's a 1983... Right. Okay. And then the other thing, just to address what you said about the concern, the well-founded concern that Garcetti had about opening up a whole slew of litigation that the federal courts don't want. This court in 2001 decided a case called Gonzalez versus City of Chicago. And it was an OPS investigator. OPS was the predecessor agency to IPRA that's now got a different name. The OPS investigator Gonzalez went to work for the police department. He changed from being an investigator of police misconduct to a Chicago police officer. He then, according to his complaint that he filed, was the subject of retaliation and was eventually terminated in his probationary status. He brought a lawsuit. It was dismissed under 12B6. This court affirmed the dismissal because there he was saying it was the submission of these reports back when he worked at OPS that was the gist of his First Amendment complaint. But this court said, quote, if Gonzalez were writing reports of police misconduct and his report so as not to disclose police corruption, Gonzalez would have a First Amendment right to expose the police cover-up to the public. So since 2001... What's the citation on that case? It's in our... You can give it to us later. Right. I'll submit a letter. But anyway, so the door, Judge Hamilton, has been opened at least a little bit, opening up the possibility of this cause of action since 2001. And to date, there's been none of these cases brought before this court. Thank you again on behalf of Lorenzo Davis for your time and attention today. Thank you. Thanks to both counsel. The case is taken under advisement.